May it please the Court, I am Neil Wake for the appellant H. Angelo & Co. H. Angelo & Co. spent over $9 million to finish this construction, almost twice the contract amount. It disclosed specific computations of categories of damages, and it disclosed various witnesses and documents for parts and for the whole of those damages. The district court dismissed the entire action, not for lack of actionable conduct on the part of the defendants, but for supposed lack of evidence of damage from any of the actionable conduct. Mr. Wake, let me just sort of focus on something. I've read the whole record, I mean the whole record, not just the excerpts, and I see a lot of numbers. There's no question about it, including a whole list of numbers that is attached to Mr. Angelo's declaration. And I have to tell you that I haven't got a clue about how Angelo would proceed to prove the amount, not the fact, the amount of damages. And that's the heart of my concern. I appreciate the fact that you probably have incurred damage. But at the summary judgment stage, the difficulty is that you've got to step up to the plate and prove it in an understandable way. And so if you could help me thread through it, I just don't see what it is. And this is one of those cases that was defended aggressively in a time-consuming and costly way. And evidence came out and evolved. So there are different numbers coming out of different points. I want to address what was of record on the summary judgment of numbers adequate to show some damage. Let me checklist those in two groupings. Obviously, the big money in this appeal is the total damage claim based on the total cost method. But before I come to that, I'd like to checklist four categories of damage that are specifically substantiated with evidence of record. First, there is the differing site conditions. That is, the construction documents projected a certain level of excavation for 11 of the houses. It turned out it was quite wrong. That's disclosed in our first supplemental disclosure statement. It's page 642 of this excerpt, and that comes under the category of what's grouped claim one, entitlements one, two, and four. That is proved by two separate documents that come from the defendants themselves. Those components of damage were additional excavation, additional foundation, and the damage delay. One shows up in the excerpts at page 194 to 197, which is Brimhall's own submission to the Park Service requesting additional compensation for the work we did attaching itemization of our works. That's their proposed change order. Which you didn't agree with. But, Your Honor, here's the point. It's not that we didn't agree with it. It comes to that what we didn't agree with was later on when they offered to pay us money, but asked that we also waive other rights. And the response is, no, we're entitled to that, but we don't have to waive other rights in order to be paid the money that you told the Park Service is owing to us, and now you're telling us a second time is owing to us. So we're entitled to the money we're owed whether or not they want to attach additional conditions to receive the payment. How much do you tab in on that account? Your Honor, and I'll look to write to their numbers, and these are minimum numbers that they're bound with because they're admissions from them. The excerpts page 194 totals up to $143,684. Later on, at Excerpts 347, they proposed to pay us $172,575. Those are adequate evidence of specific numbers enough to defeat summary judgment. An offer to settle something is evidence of a number? No, Your Honor. It wasn't an offer. It was they were going to pay that. Settlement negotiations. Forget whatever it was. Settlement negotiations are adequate evidence? Your Honor, there's no objection to this in the record, and this was ---- What's this? Mr. Wake, I'm just trying to find where there is evidence with a foundation that's admissible into evidence. And the answer is that this is admissions from them of the money that they asked for the Forest Service to pay them to pay us, and that they were going to pay to us, except they attached an illegal condition that they wanted us to waive other rights. This shows up throughout these proceedings that have been held. Is there a request for admission asking them to admit that they owed you this amount of money? I can't answer that, Your Honor. But I do have this. This is admissible as an admission from them. Similarly, there's the temporary water and power. This is disclosed in the excerpts at page 643 in the amount of $167,000. How much of it? What this was ---- How much was it, the number you just gave? What was disclosed was $167,000. What this was is that the general contractor is to supply power and water for the construction. They didn't do that. We had to truck in water. We had to buy generators and lay other wires to do that. And that's supported in the excerpts pages 44 to 81 in the affidavit of Mr. Rushing and Exhibits. There is a partial admission of this damage as well in Excerpts 349 where they acknowledge at least $16,000 of that. But, again, they didn't pay us because they weren't going to pay us unless we waived all of our other rights. Why do I have the impression that someplace in the contract it was your duty to supply the power and the water? You get that impression because they argued that in their appeal brief. But this motion was not about liability. There wasn't occasion to prove or disprove liability. This motion was solely about whether, assuming liability, we cannot quantify any damage. So that's illegitimate for them to assert that on the appeal brief where we don't have occasion to deal with the merits of underlying claims. And, Your Honors, there's a third specific category, the arbitrary enforcement of the line limits. That is, the Forest Service laid out lines basically to protect native vegetation. It turned out some of those lines were right up against the walls. We asked to approach the Forest Service to get permission to adjust it. They were flexible with that in general. The general contractor wouldn't let us deal directly, wouldn't approach them. We had to build the back of the wall, not by going around to work on it, but by working through the house at great additional expense. That discloses $303,000. There is ample evidence of that at the excerpts 367. Again, the affidavits of Randall Rushing and Victoria Rodriguez. There's a fourth specific category, and that is the unpaid balance of the original contract. Now, we had disputes over these numbers, so I'm going to use their number as a low minimum number. This is, again, disclosed in the excerpts at 647 in the amount of $370,000 for us. The evidence of that is in Mr. Angel. Mr. Angel is a disclosed witness for costs and the whole course of administration of the contract. His affidavit shows that the contract amount was $4.8 million. We now take their admission. We say they paid less, but they say they paid us $4,655,000. That leaves a spread right there of $144,000. So there you have evidence, their admission of quantified damage. We think it's too low, but it's at least that much. There's an even more dramatic component of this, of the unpaid original contract price, and that is the liquidated damages. The Forest Service assessed penalties against Brimhall for lateness, a daily penalty totaled up to $106,400. Brimhall then deducted that from their payments to us. We say wrongfully they had no right to do that, but this motion isn't about liability. It's just about measuring damages. We found out late in this litigation that they later got paid by the Forest Service for the very money that they'd already compensated themselves for by deducting it from us, and they didn't pay it to us. That appears in the eighth supplemental disclosure and in the excerpts at page 94 and also at the clerk's record, item number 86, where they back charge that to us. Now those are quantified liquidated sums in the record pointed to, and they're in short for these groupings alone. We have evidence that was not accounted for by the district court in its order, all from disclosed witnesses and Brimhall's own admissions, and all support computations that we disclosed at the outset. These numbers total up to maybe $700,000 or $800,000, not addressed. There's clearly reversible error for them alone. But I want to turn to where the big money is in this appeal, and that is our total damage. Now, the total cost method of damage is a way of measuring damage, but it doesn't change the amount we disclosed originally, which was a bit under $5 million. Let me just jump to the key of this issue as it has been thrashed out in the briefs, and then I'll elaborate a little bit on it. It is wrong to exclude the use of the total cost method on summary judgment. First, three of the four factors to be considered in applying the total cost method, the other side admits in their briefs in the district court, are fact questions. The other factor, unavailability of a more precise method of measuring damages, was established by the defendants themselves when they persuaded the district court that there were insufficient records in this case to support use of a critical analysis path method. They were stopped to turn around and say now that we were required to use a different method when the other method was excluded for lack of documents. That just loses me, because you thought that you could calculate damages with fair degree of precision, and you put on evidence that you could through Frank. Right. And that was excluded, not because the damages calculation was unsupported, but because it wasn't disclosed. It's very different. So I'm hard pressed to see how in the face of having calculated damages with a fair degree of accuracy, you then say, ah, yes, but I can't do that. Therefore, I can resort to a different method. Your Honor, allow me to correct that. What the district court held was two things. Mr. Frank, when he gave his deposition, there were two sets of problems. One is he relied in part on some subconsultants who had not been disclosed. But as is demonstrated in the appeal brief from Grimhall itself, there was the independent problem that the records were not sufficient to substantiate what Mr. Frank was trying to do, and therefore he made assumptions. So it wasn't just that there was assumptions about subconsultants who were not disclosed, but there was an absence of the records that Mr. Frank said he needed, and so he made assumptions. Well, yes, but that's a different problem from having a situation where damages are inherently unascertainable. That's very different. You may not have ascertained them very well, but that's a different issue from being unascertainable, isn't it? No, Your Honor. This brings us back to a fundamental principle of the law of damages, and that is when there is evidence of damage, and here's ample evidence. We're taking that as given for the purposes of this discussion. A party who may have inadequate records for a traditional method of damage is not free game for a contract breacher. At that point, the law provides that lesser proof of the amount of evidence will suffice. The law does not allow a begrudging reading of the amount of proof when you have evidence of the fact of damage. In this case, the other side proved, to the satisfaction of the district judge, that there were inadequate records to maintain a traditional critical path analysis. Does that mean that that lack of evidence, lack of records disqualifies an alternate method? No. It means that an alternate method that is legitimate can be gone to because the measurement of the damage is less important than the fact of liability and the fact of damage. Assuming that's true, point me to some place where there is a calculation of damages under the total cost method. Yes, Your Honor. This, again, this is disclosed in our original disclosure. It comes, it is done. I'm not really worried about what was disclosed or not at this point. Okay. What we're now worried about is whether the evidence induced in opposition to the summary judgment suffices to get you to a jury. Here it is, Your Honor. Henry Angelo, the owner of the company, who testifies, he has 40 years of experience. He's bid hundreds of government contracts. I agree that he can testify to the value of his business. And he testified that the amount that they paid to complete the construction was $909,366,000, and he had it backed up with the vendor cost detail. The other component of the damage. See, I don't know whether he did or not, and that's the problem. I know he attaches a list that's got like 15 or 50 pages or something of figures that I can't decipher. I have no idea what those figures are. But, Your Honor, in paragraph 13 of his affidavit, he states it clearly. This is the amount that was paid. So that affidavit. You know, with all respect to Mr. Angelo, so what? If there's no foundation for his number, it's just a number. Not at all. With all respect, Your Honor, I submit that is not correct. The foundation is his testimony of his knowledge. He supplied that documentation to. And, in addition, there is no challenge to the foundation of his affidavit. The law is clear that on summary judgment, like at trial, if you want to object to admissibility for foundation, you must make that objection. And if you don't, the district court must consider it. The reason for that is obvious. If you object to foundation, you can cure it by supplemental evidence. You cannot lay in the weeds in the district court. No, all I'm saying is I just don't understand the figures. I mean, they may mean something. But typically you would see in a damages calculation somebody saying, I asked the ex-accountant for my firm to perform an analysis of why. And at my request, they did. And here's what they concluded, and here's why. And, Your Honor, let me. I don't see that. It goes in two or three steps. The first step is how much did they pay? Mr. Angelo attests to his knowledge, his familiarity, and the numbers, and he has the documents to back. I submit that as evidence. And if someone finds it unpersuasive, it's for the jury to determine whether it's unpersuasive. That's just the first step. The second step in the TCM method is how much was paid. Now, again, there's dispute there, so I'm going to take their admission.  That yields a difference of about $4.7 million, again, about the number we disclosed. So, and, Your Honor, there are other elements. I'll briefly touch on them, then I'd like to save just a little bit of time for rebuttal, that Mr. Angelo also attests to the reasonableness of his bid. He's bidded hundreds of government contracts. This is the first one he ever lost money on. That supports his conclusion that it is reasonable. And he's not responsible for the additional costs. St. Paul admitted that directly in their brief. There's ample other evidence of lack of liability. In summary, Your Honor, one of the major wrong turns in the road here was losing track that this is summary judgment. We didn't have to prove to the persuasion of anybody any ultimate fact or any precondition fact. We only needed evidence sufficient for a reasonable person to believe it. The case I want to emphasize is the Eighth Circuit case on Nevada Power, Nebraska Power, where the court upheld submission of all these threshold things to the jury. The jury found a mixed bag, damages on some grounds for some damages, on total cost for others, and denied damage on others. That's what the jury trial is for. I'd like to reserve the remaining time. Thank you, Your Honor. Ms. Turek. Mr. Turek. Good morning. May it please the Court, my name is Mark Turek. I'm here to represent Vermont Palmer Construction Company. I'd like to divide our time with Ms. Rebecca Evenson, who is going to speak on behalf of St. Paul. I'd like to take ten minutes of my time and leave the other ten minutes for her. We've also agreed that we're going to try to divide the subject matter as best we can. She will deal with the discussion regarding the total cost method of damage as well as quantum merit. I will do my best to address the remainder. In this case, Your Honors, I'm asking you to affirm Chief Judge McNamee's decision in this case, granting summary judgment in my client's favor. I believe the rules are pretty simple in this case, has a pretty discreet issue, and that is whether H. Angelo, in this case, is the plaintiff, properly disclosed the damages that they say they had. Well, isn't it summary judgment at the district court level, isn't it the critical question that the district court is asking with respect to this remaining issue of damages is, is there a genuine tribal issue of fact over damages? Yes, Your Honor. I believe that's exactly what the judge was asking. In this case, they had an expert named Joe Frank, who we've already discussed for a moment. His testimony is out. His testimony is out. Right. And the result of that then. Now, you would think in a case like this that it wouldn't be too difficult to establish a genuine tribal issue of fact. I agree with you, Your Honor, except they're claiming millions of dollars. Yes. And that's exactly where I wanted to go next, because they made a decision early on in this case to rely on Joe Frank. In their disclosure statement, the only one out of which they're trying to claim $5 million worth of damages, the only one that even addresses damages is their first supplemental disclosure statement. It's four-and-a-half pages long, and the only thing they did was simply regurgitate the entitlement numbers out of Joe Frank's claim books. And so what happened in this case, when Joe Frank, after we took his deposition, he conceded he couldn't explain any of the basis for those numbers, Judge McNamee excluded his testimony on the basis of his inability to tell us anything about those numbers. It was at that point, then, that a summary judgment motion became proper, and Judge McNamee granted it, because they had placed all of their disclosed evidence on that issue through Frank into the single first supplemental disclosure statement. Sort of. Yes. Because Angelo was a disclosed witness, and he's the president of the company. And, Your Honor – And I don't quite understand why he can't testify to his damages. Mr. Angelo can come in and testify, but just like every other witness in this case, Your Honor, he will be required to testify from his personal knowledge of things he observed. He's not an expert. Wait, listen, no. I mean, he's the president of the company. He lives in Florida. This job took place on the southern – You know what? You mean the president of General Motors can't testify to the value of a contract that General Motors enters into? I mean, come on. Your Honor, their case depends upon what the basis for their claim damages are, which is that Brimhall Palmer, my client, did something wrong on that job site. He's not going to be able to testify about it. Well, we're not talking about liability. We're talking about whether there is any measurable proof of the amount of damages that are calculated under a theory that holds up. Yes, Your Honor. And I think we have to go back to what was in front of Judge McNamee when we filed our motion for summary judgment. Mr. Angelo's affidavit was in front of Judge McNamee, and he considered that affidavit. And that affidavit does not say that he has personal knowledge about the evidence for their damages. What it says is he reviewed things. We don't know who prepared the things that he reviewed. We don't know what the foundation for that evidence is. Judge McNamee didn't know either. And so on – Well, okay, look. Can't Angelo stand up and say, look, we spent $9.3-plus million, and our contract was for $4-point-something-or-other million dollars, and that's all we've got. That's damages. I mean, we've lost money. So we're going to go to trial, and we'll show how we lost $5 million. And, Your Honor, if they had disclosed that in their first supplemental disclosure statement or any of their other 15 or 20 disclosure statements, perhaps that would have been proper under Rule 26. We're not talking about a disclosure statement now. We're talking about summary judgment. Right. But they are obligated to show us on summary judgment what they properly disclosed in this case by the discovery cutoff. That just loses me, all right, because Frank was excluded because of an inadequate disclosure. Yes. Okay. We're past that. Now you've got a motion for summary judgment. And in response, there's a declaration of Angelo and there's a declaration of Rushing or whatever his name is. Angelo is a disclosed witness, so there's no question about that, and he's the president of the company. Yes, Your Honor. So why, I mean, aren't you now at the position of saying why the evidence that they put on is not sufficient to at least get to a jury? Two answers, I guess. Let's start with my last one first, which is where's the calculation that we're entitled to under Rule 26? The comment says we're entitled to that. We're not talking about a discovery sanction here. Okay. We're at summary judgment. It either stands or falls on the basis of the evidence that was adduced or not. Unless I'm terribly misapprehending this case, we're not up here on the discovery sanction. They don't even raise the issue of the propriety of excluding Frank's testimony, declarations, claims, whatever they call them. But, Your Honor, what led to the motion for summary judgment was the discovery problem. That's fine. You can lead to it because the moon is blue. But we've got summary judgment granted. And these folks plainly suffered some damage. And as I see it, at least, and I may be wrong, so that's why I'm trying to get you to answer my question. As I see it, the question is, is there hardcore admissible evidence of damages under an acceptable theory that gets them at least to the jury? My answer to that, Your Honor, is no. It would be no surprise that I'm going to take that position. But here's why. My client, Brimhall Palmer, is in this case trying to figure out how to defend itself. We spent three and a half years before the summary judgment motion came up to the discovery date trying to understand what their claim was. If they now get to shift and go to a whole different case, the prejudice to Brimhall Palmer is extreme. Judge McNamee looked at their evidence and said there wasn't foundation, there wasn't first-person testimony that could support what they had disclosed. The only thing they disclosed was the four and a half pages in their first supplemental disclosure statement. For them now to shift to Mr. Angelo's apparent total cost method, they're going to have to show that they disclosed admissible information, and they didn't do that to Judge McNamee, and it's not in the record on appeal. And they're trying to kind of step over the fact that we're entitled to prepare a defense in this case, that we were never given a chance if they shift to something other than what they disclosed. I'm not sure if I'm directly answering your question, but I'm trying. Well, I would have thought the better answer was just simply to say that the total cost method just flat-out isn't available, period. And, Your Honor, it isn't available, and — But if that's not the answer, or if that's not your position, then I don't understand how we get back into disclosures. Well, I'd like to — it is our position that total cost isn't available, but Ms. Iverson's going to be addressing the total cost method. If I could reserve that question for her, perhaps it would make more sense. Ms. Iverson, I think you've been given the ball, or not. All right. That's fine, Your Honor. Thank you. Good morning. May it please the Court, Rebecca Evanson from Altshuler-Burzon for Appellee St. Paul Mercury Insurance Company. The question about the relevance of Henry Angelo's affidavit, I think, goes to the core of this case, because the only possible relevance of this affidavit is to this total cost method, but which they are now turning to to prove damages in this case. But as the law makes clear, the — Angelo is simply not entitled to recover under a total cost method. The total cost method is a disfavored method of calculating damages. It's only available in extreme circumstances. And we've cited cases in our brief, as have Angelo, cited cases that show that there's a very narrow, narrow set of circumstances in which total cost can be used. And the first and the most important test to determine whether total cost is the appropriate method is whether, in this case, the nature of the losses is such that it's impossible or highly impractical to determine damages through any alternative method. And in this case, it's clear, from day one it's been clear, that there are alternative means to prove damages here. There are a whole host of contract damages that they have claimed, down to the dollars and cents of those claims, through, unfortunately for them, through Frank. Now, Frank's testimony was excluded, and that's not in front of this Court. What is here is what they produced on summary judgment. And all we can look to is the papers that Angelo put in front of the Court on summary judgment to show that they have a genuine issue as to damages. And they simply didn't put anything there. And the only thing that they can point to now on appeal is this affidavit of Henry Angelo, which, as Mr. Jewett suggested, is clearly not admissible evidence. The affidavit itself shows that Mr. Angelo didn't have any personal knowledge of the costs, that he wasn't competent to testify about it, and that there wasn't any foundation for his blanket assertion of what the total costs were. And I'd like to point your attention to this. Is this his statement, his affidavit? Mr. Angelo's affidavit? The district court order doesn't specifically address Henry Angelo's affidavit. What the district court held, and I'll turn your attention to ER 856, the district court held that in looking at all of the evidence that Angelo put before it, that Angelo had no witnesses with firsthand knowledge that are competent to testify about damages. And this affidavit was clearly in front of the district court at that time. I'd like to point your attention also to the Villarimo case, which we supplied as supplemental authority. In that case, this court held that summary judgment was proper, where the plaintiff, who was claiming discrimination, where the only evidence of discrimination that she could put forward was a self-serving, uncorroborated testimony of the plaintiff that doesn't even show how she knows the facts. And that's exactly what we have here. We have a self-serving, uncorroborated affidavit from the president of the company that doesn't even show how he knows the facts. Suppose that the affidavit is okay to consider for some reason. If you did consider it, does it show enough to get past summary judgment? No, Your Honor, because it is not admissible evidence. In order to get past summary judgment, the plaintiffs would have had to produce evidence that was admissible at trial. So what you're saying is that Mr. Angelo could not have taken the stand at a trial and testified to the matters that he has in his affidavit? No, Your Honor. What I'm saying is that Mr. Angelo, that Angelo, in responding to the summary judgment motion, had to give the court some admissible evidence as to why it should get over this hump of summary judgment. And it just didn't do that. Had he testified, had he given competent testimony, we might have a different question. But I would then point your attention back to where I started this argument, which was the only possible relevance of Henry Angelo's affidavit is to this total cost theory, which just isn't available here. Angelo makes passing reference to an argument in the Nebraska Power case that they cite in their brief, and they use that case to assert that they should have been able to present the total cost method to the jury. They didn't have to tell us in advance what their theory was. They should just be able to present it to the jury. But the Nebraska Power case doesn't help them. It's an out-of-circuit case. It's an outlier that hasn't been relied on in the circuit. And what Nebraska Power did was to say the district court is a gatekeeper here. If the plaintiff meets their burden of coming forward and showing that they're entitled to total cost damages, in other words, they come forward and they say, we can prove that there is no alternative method by which we can show damages because this case is so complicated. And we can prove all these other factors, the other three factors for the total cost method. If the plaintiff is able to do that, to get to that stage, then the district court acting as a gatekeeper under Nebraska Public Power may have the power to then send that question to the jury. That was not done here. On summary judgment, Angelo didn't produce any evidence or any argument even as to why it should be entitled to the total cost theory. And presumably the reason is because all along they have been arguing against the very factors that they would need to prove to get over that hurdle. Is there any place in the record, a deuce for summary judgment, that shows that anybody competent to do so has said that there's no, that as a practical matter, damages aren't ascertainable? Your Honor, if it was in the record, it wasn't identified on summary judgment. Do you think that that's required? Yes, Your Honor. Under Nebraska Public Power, what is required, if this issue is indeed to get to the jury, what the claimant is required to do is to get over the hurdle of the four total cost steps, and that is they have to produce evidence that there is no alternative method. And that's what Nebraska Public Power says, and that's what all the cases that fall under Nebraska Public Power say. Clearly, if this method is so disfavored, it's got to be only used under such narrow circumstances that you can't just assert that you're entitled to that method of calculating damages and then just send it to a jury. They have to allow the court to serve as a gatekeeping function that is its role under Nebraska Public Power. I'd like to turn briefly to the question of quantum merit, because like the total cost method, H. Angelo is falling back on the quantum merit theory because of its inability now to present any other evidence, because its experts have been excluded. But as the district court correctly found, quantum merit is unavailable as a matter of law in this case. Under Arizona law, a plaintiff may not recover in quantum merit if its relationship with the defendant was governed by a valid express contract that was fully performed. And here there's just no question that there was a valid express contract and that it was performed fully by both parties. In our briefs, Angelo points to some work that was done outside of the scope of the contract, but the only evidence they have of that work are these change orders, for which they never laid the proper foundation. But the only documents that they point to are these change orders, and these change orders prove exactly the opposite point, because the contract expressly provides for change orders as a mechanism to accommodate and compensate for changes to the contract. Under federal contracting law, public sector contracts such as this one are required to contain a mechanism, such as this change order, to deal with changes to the contract. And so all of the work that was done and that was discussed in these change order documents was expressly covered by the contract. And in addition, even if Angelo could have recovered under quantum merit under some theory, even if as a matter of law they were entitled to, they have never disclosed or identified on summary judgment any documents or any witnesses that show reasonable value of its services or that Brimhall Palmer was unjustly enriched, which is required in order to make out a quantum merit claim. In summary, Your Honors, I believe that this case is best looked at more than anything as a case about the district court's prerogative to manage its docket and to enforce the federal rules and its own orders. It's a very simple and a straightforward question that this court has to answer, and that is, was the district court correct when it held that Angelo had failed to disclose or to identify on summary judgment any admissible evidence or any witnesses that could raise a genuine issue of material fact as to its claim for damages? And Chief Judge McAmey read the record, and he considered all of the evidence that was in the record very carefully, and he came up with the answer that Angelo had simply failed to do so, simply failed to produce admissible evidence as to how it was damaged  If you have no further questions, that's all, Your Honors. I hope so. Just wait. Your Honors, let me make two points in two minutes. The appellees are in the uncomfortable position of trying to defend this judgment on a ground different from the one they persuaded the district court to accept, on a ground that they didn't preserve below and one that's weighed, and that is supposed lack of foundation or admissibility of the Angelo affidavit. In fact, Mr. Angelo was not only a disclosed witness to these subjects. He co-signed with Mr. Franks the detailed explanation that was given to back up the disclosure that was originally filed. But they didn't take his deposition. After they got Mr. Franks excluded, they thought that was the end of the case. They didn't pursue the other disclosed witnesses. And in fact, as I said before, the reason you cannot object to foundation on appeal is because it can almost always be cured if there's an objection below. You cannot raise that now. And finally, I just want to briefly comment on the quantum merit. Quantum merit is an alternative method of quantifying damages if the total cost method fails. And it would be available if the total cost method fails, because in that event we would have lost an effective remedy by contract, despite breach of the contract, despite the fact of damage. That would result in unjust enrichment for which we can get a quantum merit damage. The evidence and the measure for the quantum merit damage is the same as the evidence and the measure for the total cost method. I've given a supplemental citation that I'd like to point out in Arizona case that says, in quantum merit, the reasonable value of the construction purposes for quantum merit is the value of the construction services requested. And we have that established by Mr. Angelo's affidavit. This is a case in which the other side made a fundamental error and misled the trial judge into concluding that because they knocked out one witness and that witness was involved in a lot of the work, that no other evidence or no other witness can be examined. And the unfortunate proof of that is that the district court's 10-page order says nothing about any of this evidence we have briefed and discussed. Thank you, Your Honors. All right. Thank you, counsel, for the matter, the argument. And the matter just argued will be submitted.
judges: Leavy, Rymer, Paez